UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| REGIONS BANK, as Indenture Trustee<br>*Plaintiff*, | § § § § | |
| V. | § § | Civil Action No.: 1:21-cv-00436 |
| CRAWFORD HEALTH FACILITIES<br>DEVELOPMENT CORPORATION,<br>LLV1, LP, and CELESTE CARE, LLC | § § § § | |
| *Defendants*. | § § | |

**VERIFIED COMPLAINT FOR DAMAGES, APPOINTMENT OF A RECEIVER,
INJUNCTIVE RELIEF, AND AN ACCOUNTING**

Plaintiff Regions Bank, solely in its capacity as indenture trustee (the "***Indenture
Trustee***") under that certain Trust Indenture dated as of July 1, 2016 (the "***Indenture***") between
Crawford Health Facilities Development Corporation (the "***Issuer***") and the Indenture Trustee,
files this *Verified Complaint for Damages, Appointment of a Receiver, Injunctive Relief, and an
Accounting* (the "***Verified Complaint***") against the Issuer, LLV1, LP (the "***Borrower***"), and
Celeste Care, LLC (the "***Manager*,*" and together with the Issuer and Borrower, the
"***Defendants***") and, in support hereof, alleges as follows:

<u>**NATURE OF THE ACTION**</u>

1.      The Indenture Trustee is the trustee for the Thirteen Million One Hundred Twenty
Thousand ($13,120,000) Crawford Health Facilities Development Corporation Taxable Revenue
Bonds (Lifeline Ventures Projects) Series 2016A (the "***Bonds***").

2.      As of the date of filing, the Bonds are outstanding in the principal amount of
$13,025,000, plus unpaid interest, costs, and fees (each of which continues to accrue).

3.      The Bonds were issued to finance, among other things, the acquisition, expansion, and renovation of three assisted living and memory care facilities owned by Borrower and commonly known as:  (i) CelesteCare Fredericksburg located in Fredericksburg, Texas (the "***Fredericksburg Facility***"); (ii) CelesteCare Horseshoe Bay located in Horseshoe Bay, Texas (the "***Horseshoe Bay Facility***"); and (iii) CelesteCare Llano in Llano, Texas (the "***Llano Facility***"), and with the Fredericksburg Facility and Horseshoe Bay Facility (the "***Facilities***").

4.      Multiple Events of Default (as defined in the Indenture) have occurred and are outstanding under the Indenture, the Loan Agreement (as defined below), and the Bond Documents (as defined below) as more particularly set forth herein.  Without limitation, Borrower has failed to deposit sufficient funds with the Indenture Trustee to pay the interest, principal, and premium due on the Bonds, and to timely replenish the Debt Service Reserve Fund from which the Indenture Trustee has made the required principal and interest payments to the holders of the Bonds (the "***Bondholders***").

5.      The Bond Documents provide that, upon the occurrence of and Event of Default, the Indenture Trustee shall be entitled as a matter of strict right, without notice and without regard to the adequacy or value of any security for the Indebtedness or the solvency of any party, to the appointment of a receiver to take possession of and operate the Facilities, and to collect and apply the incomes, rents, issues, profits and revenues thereof to the Facilities' operations.

6.      Accordingly, the Indenture Trustee seeks entry of orders granting the following relief: (a) a money judgment against Borrower for the amounts due under the Bond Documents, including interest due on the Bonds, attorneys' fees, and other collection expenses; (b) the

4852-6150-9096.8

appointment of a receiver for the Collateral (as defined below); (c) immediate and preliminary injunctive relief to protect the Collateral and in aid of the Receiver (as defined below), including a temporary restraining order pursuant to Federal Rule of Civil Procedure ("**Rule**") 65(b) until a hearing can be held on the Indenture Trustee's application for the appointment of a receiver, followed by a preliminary injunction pursuant to Rule 65(a) to preserve the Collateral (as defined below) for the duration of this case; (d) an accounting; and (e) such other and further equitable and legal relief as this Court deems just and proper.

<u>**PARTIES**</u>

7.      The Indenture Trustee is an Alabama banking corporation with its principal office located in Birmingham, Alabama, and brings this suit in its capacity as indenture trustee under the Indenture for the benefit of the Bondholders.  For purposes of diversity jurisdiction, Regions is a citizen of Alabama.

8.      Section 10.07 of the Indenture provides that the Indenture Trustee is authorized to act on behalf, and in the interests of, the Bondholders without the necessity of joining as parties any Bondholders, and that any judgment recovered will be for the equal and ratable benefit of the Bondholders.

9.      Issuer is a public nonprofit health facilities development corporation created by the City of Crawford, Texas ("**Crawford**"), and existing pursuant to the Health Facilities Development Act, Chapter 221, Texas Health and Safety Code, as amended (the "**Act**"), with its principal place of business located at 6719 North Lone Star Parkway, Crawford, Texas 76638. The purpose of the Act, among other things, is to enable a municipality to create a corporation

with the power to provide, expand, and improve health facilities needed to improve the adequacy, cost, and accessibility of health care in the state by issuing bonds on behalf of the sponsoring entity to finance the cost of a health facility.  Issuer may be served with process by serving its registered agent, Sheryl A. Christian, at its registered address 6719 North Lone Star Parkway, Crawford, Texas 76638.   The Issuer is a public body corporate and politic created and existing under the laws of the State of Texas, with its principal place of business in Texas. Accordingly, the Issuer is a citizen of Texas for the purposes of diversity jurisdiction.

10.    As provided in § 4.01 of the Indenture, the Bonds are special limited obligations of the Issuer payable solely from the Trust Estate (as defined in the Indenture), and do not constitute an indebtedness or general obligation of the Issuer, Crawford, the State of Texas, or any other political subdivision of the State of Texas.  Because of the conduit financing nature of the transaction, the principal of, premium (if any), and interest on the Bonds is payable solely from the Trust Estate (as defined in the Indenture), and nothing in the Bonds or in the Indenture creates a pledge of any other funds or assets of the Issuer.  However, because Issuer has an interest in the Project, the Issuer is properly named as a Defendant unless and until such time as Issuer waives and relinquishes any interest in the Project and the outcome of this action.

11.    Borrower is a limited partnership organized and existing under the laws of the State of Texas, with a principal place of business located at 18025 Glenville Cove, Austin, Texas.  Borrower may be served with process by serving its registered agent, Lifeline Ventures, LLC, at its registered address 18025 Glenville Cove, Austin, Texas 78738.  On information and belief, Borrower's general partner is Lifeline Ventures, LLC, whose members are Gerald Faldyn

and Susan Faldyn. On information and belief, Borrower's limited partners are Gerald Faldyn and Susan Faldyn. On information and belief, Borrower is not a citizen of Alabama for the purposes of diversity jurisdiction.

12.     Manager is an affiliate of the Borrower and provides the overall operations management for the facilities comprising the Project (as defined below). Manager may be served with process by serving its registered agent, Lifeline Ventures, LLC, at its registered address 18025 Glenville Cove, Austin, Texas 78738. Manager is a limited liability company organized under the laws of the State of Texas. On information and belief, Manager's members are Gerald Faldyn who, on information and belief, is not a citizen of Alabama, and Susan Faldyn who, on information and belief, is not a citizen of Alabama. On information and belief, Manager is not a citizen of Alabama for the purposes of diversity jurisdiction.

<u>JURISDICTION AND VENUE</u>

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that (i) there is diversity of citizenship between the Plaintiff and all Defendants, and (ii) the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     Venue is proper in the Austin Division of the Western District of Texas pursuant to 28 U.S.C. §§ 124(d)(1) and 1391(b)(2), because a substantial part of the events giving rise to this Verified Complaint occurred in this division, specifically in Llano and Gillespie Counties, Texas. Moreover, the Facilities at issue in this action are located in Llano and Gillespie Counties, Texas.

<u>**FACTUAL BACKGROUND**</u>

**I.      The Bonds**

15.      The Bonds were issued pursuant to the Indenture to provide funds to (i) finance a portion of the costs of acquiring, constructing, furnishing, and equipping three assisted living facilities, including approximately 87 total units made up of 43 assisted living units and 44 memory care units, located on three separate sites in Llano and Gillespie counties, and including the conversion of certain assisted living units to memory care units and the construction of a new 15-bed memory care wing (collectively, the "***Project***"), (ii) fund interest on the Bonds during construction of the Project, (iii) fund a Debt Service Reserve Fund for the Bonds, and (iv) pay all or a portion of the costs of issuance of the Bonds.  A true and correct copy of the Indenture is attached hereto and incorporated herein as <u>**Exhibit 1**</u>.

16.      Subsequent to the issuance of the Bonds, the Issuer loaned the proceeds of the Bonds to Borrower pursuant to that certain Loan Agreement, dated as of July 1, 2016, between Borrower and the Issuer (the "***Loan Agreement***").  A true and correct copy of the Loan Agreement is attached hereto and incorporated herein as <u>**Exhibit 2**</u>.

17.      The Borrower's obligation under the Loan Agreement is evidenced by the Series 2016A promissory note (the "***Note***") in the same principal amount of the Bonds.  A true and correct copy of the Note is attached hereto and incorporated herein as <u>**Exhibit 3**</u>.

18.      The payments to be made by the Borrower and the obligations of the Borrower under the Loan Agreement and the Note are secured by a Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated as of July 1, 2016, executed by Borrower in favor of the Issuer (the "***Deed of Trust***," and together with the Indenture, the Loan

4852-6150-9096.8

Agreement, and the Note, the "***Bond Documents***"). True and correct copies of the Deed of Trust recorded in the Official Records of Llano County, Texas, and in the Official Records of Gillespie County, Texas are attached hereto and incorporated herein as **Exhibits 4 and 5**.

19.     The Indenture Trustee perfected its first priority security interest in the fixtures through filing a UCC financing statement (the "***UCC Filing Statements***"), which was properly recorded as Volume 1567 Pages 2262-2266 and Volume 1578 Pages 2867-2871 in the Official Records of Llano County, Texas, and as Instrument No. 20163930 and 20180426 in the Official Records of Gillespie County, Texas. True and correct copies of the UCC Filing Statements are attached hereto and incorporated herein as **Exhibits 6 and 7**. A UCC financing statement was also filed with the Texas Secretary of State as Financing Statement Document Number 18-0003093781 (the "***UCC Financing Statement***"), which perfected the Indenture Trustee's first priority security interest in the personal property described therein. A true and correct copy of the UCC Financing Statement is attached hereto and incorporated herein as **Exhibit 8**.

## THE BOND DOCUMENTS

**I.      The Indenture**

20.     It is an Event of Default under § 10.01(a) of the Indenture to fail to timely pay interest on the Bonds.

21.     It is an Event of Default under § 10.01(c) of the Indenture if an "Event of Default" has occurred under the Loan Agreement, as defined therein.

22.     Section 10.06 of the Indenture provides that, upon an Event of Default under the Indenture, if moneys held by the Indenture Trustee are insufficient to pay the principal, premium, if any, and interest on the Bonds, all moneys received by the Indenture Trustee will be applied as

4852-6150-9096.8

follows:

    a.  First, to the payment of the (i) Ordinary Expenses and Extraordinary Expenses of the Indenture Trustee, and (ii) any amount due to the Issuer under the Loan Agreement.

    b.  Second, if directed by the Bondholders pursuant to § 10.05, to the payment of operating expenses of the Project.

    c.  Third, to the payment of all installments of interest then due on the Bonds.

    d.  Fourth, to the payment of all installments of principal then due on the Bonds.

    e.  Fifth, to be held by the Indenture Trustee for the payment of future installments of principal and interest.

23.    After the occurrence of the Events of Default, the Majority Bondowners instructed the Indenture Trustee to pay the operating expenses of the Project ahead of the payment of the (i) Ordinary Expenses and Extraordinary Expenses of the Indenture Trustee, and (ii) any amount due to the Issuer under the Loan Agreement (the "***Majority Bondowners Instruction***").

24.    The Majority Bondowners' Instruction has terminated by its own terms.

25.    As a result of the expiration of the Majority Bondowners' Instruction, the Indenture requires the Indenture Trustee to hold all moneys received by the Indenture Trustee for the payment of future installments of principal and interest due on the Bonds. Consequently, the Indenture provides that the revenues of the Facilities are not available to pay the Facilities'

operating expenses.

26.     The Issuer has assigned and pledged to the Indenture Trustee, and granted a first priority security interest to the Indenture Trustee in, all of its right, title, and interest in the Loan Agreement (except for the Unassigned Rights, as defined in the Loan Agreement), the Note, the Deed of Trust, and all revenues, payments, receipts, and moneys to be received and held thereunder.

## II.    The Loan Agreement

27.     In connection with the issuance of the Bonds, and to provide for the repayment of the Bonds, Borrower entered into the Loan Agreement with the Issuer.

28.     As provided in the Loan Agreement, Borrower is the owner of the Project.

29.     Pursuant to § 3.01 of the Loan Agreement, the Issuer agreed to loan to Borrower the proceeds of the sale of the Bonds to fund the costs and expenses in connection with Borrower's acquisition, construction, furnishing, and equipping of the Project.

30.     Pursuant to § 5.02 of the Loan Agreement, Borrower agreed to make all payments required to be made on the Bonds in accordance with the Indenture and to pay all fees and expenses incurred by the Indenture Trustee.

31.     Pursuant to § 5.02 of the Loan Agreement, Borrower is required, among other things, to make the following payments to the Indenture Trustee:

a.     Each month to make a payment to the Indenture Trustee for deposit into the Interest Account an amount equal to one-sixth (1/6th) of the amount payable on the following Interest Payment Date; and

b.     Each month to make a payment to the Indenture Trustee for deposit into

the Principal Account an amount equal to one-twelfth (1/12th) of the amount required to retire the Bonds under the Mandatory Sinking Fund Redemption requirements or principal due on July 1.

32.    Under the granting clauses of the Indenture, the Issuer assigned all of the Issuer's right, title and interest in and to Loan Agreement to the Indenture Trustee.

## III.    The Deed of Trust

33.    To secure the obligations of Borrower under the Loan Agreement, Borrower executed and delivered to the Issuer the Deed of Trust.

34.    Pursuant to the Deed of Trust, Borrower conveyed in trust, for the benefit of the Indenture Trustee, among other property (the "***Collateral***"):

a.    all those certain tracts, pieces or parcels of land in Gillespie and Llano Counties, Texas, on which the Facilities are located and more particularly described in **Exhibit A** to the Deed of Trust (collectively, the "***Land***");

b.    All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, fire extinguishers and any other safety equipment required by governmental regulation or law, washers, dryers, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, window screens, awnings and storm sashes, which are or shall be attached to said buildings, structures or improvements and all other furnishings, furniture, machinery, appliances, vehicles (excluding Grantor's personal automobiles, if any), building supplies and materials, warranties and other rights under construction service and other contracts, books and records, inventory, equipment, fixtures and accessions, chattels, chattel paper, instruments, documents, accounts, deposits accounts, farm products, goods, consumer goods and general intangibles, investment property, letter-of-credit rights, letters of credit, money, and all personal property of every kind and nature whatsoever now or hereafter owned by Borrower and located in, on or about, or used or intended to be used with or in connection with the use,

operation or enjoyment of the Project;

c.    all right, title and interest in and to any and all existing and future leases (including subleases) residency agreements, rental agreements, licenses, use and occupancy agreements, whether written or oral, and any and all extensions, renewals, and replacements thereof, upon all or relating to any part of the Premises, and any and all guaranties of the obligations of a resident (each, a "***Resident***") thereunder (collectively, the "***Leases***");

d.    all income, rents, issues, profits and revenues of the Premises from time to time accruing (including without limitation all payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by Borrower or in a trust account, and escrow funds) (collectively, "***Rents***") and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Borrower of, in and to the same, reserving only the right to Borrower to collect the same so long as Borrower is not in Default hereunder; and

e.    all right, title and interest of Borrower in and to any award or awards heretofore made or hereafter to be made by any municipal, county, state or federal authorities to the present or any subsequent owners of any of the Premises, including, without limitation, any award or awards, or settlement or payments, or other compensation hereafter made resulting from (i) condemnation proceedings or the taking of any part or all of the Premises, under the power of eminent domain, or (ii) the alteration of grade or the location or discontinuance of any street adjoining the Land or any part thereof, or (iii) any other injury to or decrease in value of the Premises.

35.    The Deed of Trust and the UCC Filing Statements were properly recorded in the Official Records of Llano County, Texas and the Official Records of Gillespie County, Texas. The Indenture Trustee also filed the UCC Financing Statement with the Texas Secretary of State. Accordingly, pursuant to the Deed of Trust, the UCC Filing Statements, and the UCC Financing Statement, the Indenture Trustee has properly perfected, first-priority liens on and security interests in the Collateral.

4852-6150-9096.8

36.     It is an Event of Default under §§ 2.01(a) and (d) of the Deed of Trust if an Event of Default has occurred under the Loan Agreement or the Indenture.

37.     Under the granting clauses of the Indenture, the Issuer assigned all of the Issuer's right, title and interest in and to the Deed of Trust to the Indenture Trustee.

## IV.     The Facilities.

38.     CelesteCare of Horseshoe Bay Assisted Living is a 14-unit assisted living facility.

39.     CelesteCare of Horseshoe Bay Memory Care is a 16-unit memory care facility.

40.     CelesteCare of Llano Assisted Living is a 15-unit assisted living facility.

41.     CelesteCare of Llano Memory Care is a 12-unit memory care facility.

42.     CelesteCare of Fredericksburg Assisted Living is a 14-unit assisted living facility.

43.     CelesteCare of Fredericksburg Memory Care is a 16-unit memory care facility.

## V.     Remedies; Events of Default; Notice of Default.

44.     Borrower has failed to operate the Facilities in accordance with the Bond Documents and is operating at a negative cash flow such that Borrower is unable to pay its debt service owing on the Bonds and other funding requirements under the Indenture in addition to its operating expenses and vendors.

45.     As of the end of its Fiscal Year, December 31, 2020, Borrower had 31.4 Days Cash on Hand.  As of the end of the quarter ended March 31, 2021, Borrower had 22.3 Days Cash on Hand.  This is well below the requirement that the Borrower maintain at least 60 Days Cash on Hand.

46.     As a result, multiple Events of Default have occurred and remain outstanding under the Indenture and other Bond Documents, including, without limitation, the following:

4852-6150-9096.8

    a.   An Event of Default under § 10.01(a) of the Loan Agreement has occurred and is continuing by virtue of the Borrower's failure to deposit sufficient revenues with the Trustee to permit the payment of interest that was due on the Bonds as of January 1, 2018, July 1, 2018, January 1, 2019, July 1, 2019, January 1, 2020, July 1, 2020, and January 1, 2021.

    b.   As a result of these Events of Default, the interest payments were funded by the Indenture Trustee from moneys drawn on the Debt Service Reserve Fund.  Borrower then failed to pay the Indenture Trustee the money necessary to replenish the Debt Service Reserve Fund balance to the Debt Service Reserve Requirement.  Pursuant to the Indenture, the Debt Service Requirement for the Debt Service Reserve Fund is $1,050,000.  As of May 11, 2021, the balance in the Debt Service Reserve Fund is $100,283.54.

47.    On or about January 24, 2018, the Borrower was given notice of the Events of Default, a true and correct copy of which is attached here as **Exhibit 9**.

48.    Section 10.03 of the Indenture provides, among other things, that if an Event of Default occurs and is continuing, the Indenture Trustee has the power to proceed with any available right or remedy granted by the Bond Documents or Constitution and laws of the State of Texas for the enforcement of any proper legal or equitable remedy to protect the rights of the Bondholders.

## VI.    Indenture Trustee's Right to the Appointment of a Receiver

49.    Pursuant to § 2.05 of the Deed of Trust, if a Default or Event of Default shall have occurred and be continuing the Indenture Trustee shall be entitled as matter of strict right,

4852-6150-9096.8

without notice and without regard to the adequacy or value of any security for the Indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of an to operate the Premises and to collect and apply the incomes, rents, issues, profits and revenues thereof.

### COUNT I
**(MONEY JUDGMENT FOR BREACH OF CONTRACT)**

50.     The Indenture Trustee incorporates by reference the allegations set forth in Paragraphs 1 through this Paragraph as if fully set forth at length in this Paragraph.

51.     Pursuant to the Indenture, the Indenture Trustee is the holder and owner of all of the Issuer's rights, title, and interests in and under the Bond Documents.  As a direct and proximate result of the Events of Default, Borrower has breached the Bond Documents, which are valid and enforceable agreements.  Consequently, the Indenture Trustee is entitled to recover from Borrower all amounts owed or payable under the Bond Documents, including without limitation any amounts that will come due while this Verified Complaint is pending.

52.     Accordingly, the Indenture Trustee seeks a judgment for breach of contract in favor of the Indenture Trustee and against Borrower in an aggregate amount of not less than $949,716.46, plus any amounts that will come due while this Verified Complaint is pending, plus pre- and post-judgment interest, other costs incurred under the Bond Documents, the Indenture Trustee's fees and expenses, including administrative and default fees and expenses, and costs incurred by the Indenture Trustee in enforcing the Bond Documents, including without limitation reasonable attorneys' fees and expenses.

4852-6150-9096.8

53.     The Indenture Trustee expressly reserves all rights to amend this Verified Complaint to seek additional damages as they accrue and to seek any and all available remedies, and this claim for damages is made without waiving, and without prejudice to, the Indenture Trustee's right to foreclose on the Collateral under the Bond Documents, or to exercise any other rights or remedies available to the Indenture Trustee.

### COUNT II
### (APPOINTMENT OF A RECEIVER)

54.     The Indenture Trustee incorporates by reference the allegations set forth in Paragraphs 1 through this Paragraph as if fully set forth at length herein.

55.     This Court has the legal and equitable power to appoint a receiver to take possession of Borrower's property for the preservation of the Project and other Collateral.

56.     Pursuant to Rule 66, this Court is authorized to appoint a receiver over the Facilities and other Collateral.

57.     The appointment of a receiver to take control of and manage Facilities and other Collateral is necessary and proper under the circumstances to preserve the Collateral and to control the operations of the Facilities.

58.     As a result of Borrower's defaults under the Bond Documents, the Indenture Trustee is entitled to the appointment of a receiver both under the express terms of the Bond Documents and because equitable considerations weigh heavily in favor of such appointment.

59.     The appointment of a receiver is appropriate where the parties have contractually agreed to a receivership. § 2.05 of the Deed of Trust provides:

> If a Default or Event of Default shall have occurred and be continuing, [the Indenture Trustee], upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the adequacy or value of any security for the Indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Premises and to collect and apply the incomes, rents, issues, profits and revenues thereof.

Thus, Borrower expressly agreed that, upon an Event of Default, the Indenture Trustee is entitled as a matter of right to the appointment of a receiver to take control of the Collateral, including, but not limited to, the right to receive the rents, issues and profits flowing from the Facilities

60.     Absent the appointment of a receiver, the Indenture Trustee does not have any other adequate legal remedies to enforce its rights under the terms of the Indenture.  Due to the fungible nature of the Collateral, the Collateral is at risk of being dissipated, lost, concealed, injured, diminished in value or otherwise squandered.  As each day passes and the Project Revenues are expended, the Indenture Trustee and the holders of the Bonds are irreparably harmed as those Project Revenues can never be recouped or otherwise generated again.  The appointment of a receiver will do more good than harm, particularly for the residents at the Facilities.  Absent the appointment of a receiver, the Indenture Trustee will have no ability to enforce and satisfy a money judgment.  As a result, holders of the Bonds will not receive the benefit of their bargain.

61.     The Indenture Trustee requests that Derek Pierce of Healthcare Management Partners, LLC, or another qualified individual, be appointed Receiver (the "***Receiver***") in this matter.  The Indenture Trustee believes that Mr. Pierce's appointment as Receiver is in the best interests of the Indenture Trustee, the Bondholders, Defendants, and any other parties who might

4852-6150-9096.8

16

assert an interest in the Collateral, and the residents of the Facilities. Furthermore, the Indenture Trustee believes Mr. Pierce to have the requisite skills and resources to serve as the Receiver in this case.

62.     The Indenture Trustee further requests that the Court grant the Receiver all the rights, powers, duties, authority, and protections ordinarily granted to a receiver and necessary to take possession of, maintain, and preserve the Collateral, including, without limitation, (a) the obligation to provide monthly operating reports to the Court and the Indenture Trustee reflecting the financial performance and status of the Project in such form and content, and by such time, as required by the Indenture Trustee or Order of this Court; (b) the right to market and, if appropriate, sell the Collateral, or any part thereof, pursuant to 28 U.S.C. § 2001, *et seq.*, upon the request of the Indenture Trustee and in accordance with terms hereafter approved by Indenture Trustee and the Court; (c) the right to retain the current management company, or terminate the current management company and hire another professional management company, on terms approved by the Receiver, to assist the Receiver in managing and operating the Project; (d) the right to hire accountants, attorneys and/or other professionals, subject to Court approval of any applications for compensation; (e) the right to audit the books and records of Borrower, Manager, the Project, and any other related entity involved in the operations of the Project; and (f) the right to use the revenues generated from the Project to pay the reasonable and necessary expenses of managing and operating the Project, including the Receiver's fees and expenses.

4852-6150-9096.8

63.    The Indenture Trustee further requests that the Receiver's compensation be paid monthly in arrears from the revenues generated from the Project in an amount equal to $575.00 per hour, plus the Receiver's reasonable and necessary out-of-pocket expenses directly related to the Project, including the fees and expenses of any professionals engaged by Receiver; provided, however, that the Indenture Trustee requests that prior to the Receiver receiving any compensation or reimbursement of any expenses, the Court require the Receiver to submit monthly reports to the Indenture Trustee by the twenty-fifth (25th) day of each month documenting his time and expenses, and the time and expenses of any professionals engaged by him, for the immediately preceding month.  The Indenture Trustee shall have until the fifteenth (15th) day of the following month to object to any fees and expenses included in the report. Accordingly, the Indenture Trustee reserves the right to object to any fees or expenses the Indenture Trustee believes to be unreasonable.

64.    Finally, the Indenture Trustee requests that the Receiver be required to post a Receiver's Bond in an amount equal to fifty thousand U.S. dollars ($50,000.00).

### COUNT III
### (INJUNCTIVE RELIEF)

65.    The Indenture Trustee incorporates by reference the allegations set forth in Paragraphs 1 through this Paragraph as if set forth fully at length in this Paragraph.

66.    In order to fortify the Receiver appointed by this Court, and to protect the interests of the Indenture Trustee, the Bondholders, and any residents of the Facilities, the Indenture Trustee requests that this Court immediately enter a temporary restraining order until a hearing can be held on the Indenture Trustee's application for the appointment of the Receiver,

4852-6150-9096.8

followed by a preliminary injunction to take effect for the duration of this case, or until further order of this Court.

67.     The proper and public handling of this matter through a receivership administered under the supervision of this Court is important to the community.  Many of the residents of the Project are senior citizens and local individual residents on a fixed income.  It is important that the receivership operate to give them and their family members confidence that their health and welfare is being properly handled.  The residents and family members also have an interest in understanding how the process works. An injunction will prevent interference by any of the Defendants with the Receiver's operation of the Project.   Thus, irreparable harm would result not only to Trustee and its Collateral, but also to the residents of the Facilities and the Bondholders, if the injunction is not entered.

68.     Under applicable law, the Indenture Trustee is entitled to a temporary restraining order and a preliminary injunction.  Without a temporary restraining order, the Collateral may be diverted, wasted or otherwise dissipated prior to the appointment of the Receiver.  Without preliminary injunctive relief, the Receiver and concomitant receivership are unlikely to succeed.

69.     Events of Default have occurred and continue to occur under the Indenture, and the Indenture Trustee is likely to succeed on the merits of its claims for breach of the Bond Documents.

70.     Injunctive relief is necessary to aid a receiver in fulfilling its duties and obligations with respect to the Collateral.

4852-6150-9096.8

71.     After an Event of Default, the Borrower has no right to control the Collateral, including rents, revenues, earnings, income, products, and profits of the Facilities.

72.     In failing to manage the Facilities so as to generate sufficient income to pay the obligations under the Bond Documents, the Borrower is violating the Indenture Trustee's rights and impairing the value of the Collateral.

73.     The Indenture Trustee will suffer imminent harm and irreparable injury, and will be left without an adequate remedy at law unless injunctive relief is granted in aid of the Receiver, because the nature of the Collateral (*i.e.*, the revenues generated by the Facilities) permits it to be dissipated, concealed or removed from the Court's jurisdiction and nature of the business carried out by the Borrower at the Facilities is ripe for the loss of business goodwill.

74.     Immediate injunctive relief is imperative in order to prevent irreparable harm to the Collateral.

75.     Granting the injunction will not harm Defendants and will benefit the public interest.

76.     The Indenture Trustee has provided advance notice of this Complaint and its contents to the Defendants prior to its filing.

77.     Accordingly, the Indenture Trustee is entitled to:

a.     the immediate entry of an *ex parte* order granting a temporary restraining order pursuant to Rule 65(b) of the Federal Rules against the Defendants, and their successors, assigns, agents, employees, attorneys, or anyone acting for or in concert with them: (i) enjoining them from wasting, diverting, or otherwise dissipating the Collateral; (ii) enjoining them from collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of the Collateral, including Project revenues, and the proceeds derived therefrom, other than to pay necessary expenses in the ordinary course of the Facilities' business (but excluding payments to insiders, including Manager) ("***Permitted Expenses***"); (iii) requiring them to deposit Project

revenues and other cash collateral derived from the Facilities remaining after the payment of Permitted Expenses into a separate escrow account to be held pending further order of this Court; (iv) enjoining them from removing any property from the Facilities and from removing, destroying, concealing, changing, or altering in any manner any of the books or records relating to the ownership, possession, or operation of the Collateral; (v) requiring them to preserve the Collateral in such state as it existed on the date of filing this Complaint;

       b.     entry of a preliminary injunction against the Defendants, and their successors, assigns, agents, employees, attorneys, or anyone acting for or in concert with them: (i) enjoining them from possessing or managing the Facilities and from interfering in any way with the possession or management of the Facilities by the Receiver; (ii) enjoining them from collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of the Collateral, including Project revenues, and the proceeds derived therefrom, during and pending the appointment of the Receiver; (iii) requiring them to pay the Project revenues and other cash collateral derived therefrom to the Receiver; (iv) enjoining them from removing any property from the Facilities and from removing, destroying, concealing, changing, or altering in any manner any of the books or records relating to the ownership, possession, or operation of the Collateral; (v) requiring them to pay and turn over immediately to the Receiver and to perform all acts necessary to transfer to the Receiver all funds on hand in cash and all funds held in deposit accounts of or for the benefit of the Facilities arising from the ownership, possession, or operation of the Facilities and all accounts, accounts receivable, and any other collectibles and all keys, books, records, equipment, and all things in any manner related to the ownership, possession or operation of the Facilities; and

       c.     entry of a preliminary injunction enjoining the Defendants, or any party who is provided with notice of the Court's order, from prosecuting any claim against the Receiver or the Collateral, other than in this action and only after proper motion is filed and an order is entered allowing such party to file such claim herein.

## COUNT IV
### (ACCOUNTING)

78.    The Indenture Trustee incorporates by reference the allegations set forth in Paragraphs 1 through this Paragraph as if fully set forth at length herein.

79.    The Indenture Trustee is entitled to an accounting from the Borrower and Manager, as the party performing management services for the Facilities, of the Facilities financial performance and expenses.

4852-6150-9096.8

**WHEREFORE**, the Indenture Trustee respectfully requests the following relief:

a)      That the Court enter judgment for breach of contract in favor of the Indenture Trustee and against Borrower in an aggregate amount of not less than $949,716.46, plus any amounts that will come due while this Verified Complaint is pending, plus pre- and post-judgment interest, other costs incurred under the Bond Documents, the Indenture Trustee's fees and expenses, including administrative and default fees and expenses, and costs incurred by the Indenture Trustee in enforcing the Bond Documents, including without limitation reasonable attorneys' fees and expenses;

b)      That the Court appoint the Receiver to take possession and control of the Collateral (including the Project, all related real and personal property thereto, and revenues therefrom); to maintain and preserve the Collateral, including stabilizing the operation of the Project; that the Court grant the Receiver all of the powers, duties, authority, and protections ordinarily granted to a receiver and necessary to possess, maintain, and preserve the Collateral, including, without limitation, the power to sell the Collateral, or any part thereof, pursuant to 28 U.S.C. § 2001, *et seq.*, in accordance with such terms as are hereafter approved by the Indenture Trustee and the Court; that the Receiver be compensated as provided herein; and that the Court set the Receiver's bond as provided herein; and

c)      That the Court grant the Indenture Trustee and the Receiver injunctive relief as requested herein to, among other things, enjoin the Defendants (and their agents and all parties acting by, through, or in concert with them) from interfering with the duties of the Receiver, to direct the payment of revenues to the Receiver, to enjoin other parties from seeking recovery

4852-6150-9096.8

against Borrower or the Collateral, except in accordance with the relief requested herein, and for all other relief that may become necessary to maintain, preserve, and protect the Collateral and in aid of the duties conferred on the Receiver by the Court;

d)    That the Court direct Borrower and Manager to provide the Indenture Trustee with an accounting for the period from the date of issuance of the Bonds to and including the date of entry of such order; and

e)    granting such other and further relief as this Court deems just and proper.

Dated: May 17, 2021.                    Respectfully submitted,

*/s/ Cleveland R. Burke*
Cleveland R. Burke
Texas Bar No. 24064975
cleveland.burke@wallerlaw.com
100 Congress Avenue, 18th Floor
Austin, Texas 78701
(512) 685-6400 (telephone)
(512) 472-5248 (facsimile)

*Attorneys for Regions Bank, as Indenture Trustee*

4852-6150-9096.8

## VERIFICATION

I, Susan Baker, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the facts set forth in the above *Verified Amended Complaint for Damages, Appointment of a Receiver, Injunctive Relief, and an Accounting* are true and accurate to the best of my knowledge, information, and belief.

Susan Baker, Senior Vice President

Regions Bank